The opinions of the judges were delivered in February term, 1801.
Kinsey, C. J.
This cause was argued at the last term, and the judgment was postponed on account of some difference of opinion among the members of the court, which it was hoped might be removed by further consideration-That effect has not, however, resulted, as was anticipated, nor does there exist any probability that a further procrastination will lead to unanimity of opinion.
This discordance does not arise from any of those complicated or intricate combination of circumstances, involving numerous and conflicting principles of law, upon which the *479 learned judges in Westminster Hall sometimes doubt, and sometimes differ. There is no difficulty in the facts, for they are few in number, and spread before us on the record; but the question arises upon the application of the most familiar and elementary principles of law to these facts. I have examined the question with as much attention as was compatible with a very infirm state of health, and have spared no pains to arrive at the truth of the case; if, therefore, I am wrong in the opinion I have formed, my error may be considered as incurable.
[His honor here recapitulated the facts of the case].
Upon these circumstances, the question arises, whether the demandant is entitled to dower in the premises mortgaged by the deed to which she was a party, and sold under an execution on a judgment against the husband ? In order to arrive at any settled conclusion upon the subject, it will be necessary briefly to consider the nature of the estate now claimed, the principles on which alone such a claim can be established, and the circumstances which are prescribed, as essential to be proved before the demand can be sustained in a court of law, where, alone, it is properly cognizable.
In the state of New Jersey, as far as my experience extends, *every demand of dower is made at common law, and this may, indeed, be considered as the only species of dower recognized in How Jersey. Dower, then, at the common lahv, is the right which the widow has to one-third of the lands of inheritance whereof the husband was seized during coverture, to hold during her life.
The claim of dower is emphatically, a legal demand. 2 Br. Ch. Rep. 630. It is exclusively within the cognizance of common law courts, and governed by common law principles. Equity never interferes with the legal right, either to create, enlarge, or diminish it; nor does a court of equity exercise jurisdiction over it in any case, excepting for the purpose of lending its aid to effect a discovery. For this purpose, the widow may go into chancery, *480 but this object being accomplished, if a question arises as to the validity of the claim, it must be ascertained and fixed in a court of common law. These are the doctrines laid down by the master of the rolls, in Curtis v. Curtis, (2 Br. Ch. Rep. 630) so recently as the year 1789.
He further remarked, in that case, that since the case of Banks v. Sutton, (2 P. Wms. 700) had been overruled, it was too late to contend, that the widow could have her dower out of any estate in which her husband had not the legal fee. Curtis v. Curtis was retained for a year in chancery, to afford the widow an 'opportunity to verify her title at law.
Woodeson (sect. 29, vol. ii. 298) says, “ trusts, in many respects, resemble the equity of redemption after a mortgage in fee. In both these interests, a husband is entitled to be tenant by the curtesy, though it is settled, that a wife is not tó be endowed of a trust estate.” If it is not expressly stated, totidem verbis, that she cannot be endowed of an equity of redemption, it may clearly be inferred from the language of the learned author. The doubt, however, must be removed by reference to the language of the note annexed to the sentence cited, “ -when it is said, that the wife is not dowable of an equity of redemption in fee, this, of course, always supposes the mortgage to have been prior to the marriage :” or, in this state, what would have been an equivalent circumstance, that she had legally joined iff the execution of the instrument. Lord Loughborough, in Dixon v. Saville, (1 Br. Ch. Rep. 326) considered the question as so well settled that it would be wrong to discuss it.
*In Banks v. Sutton, Sir Joseph Jekyll seemed to countenance a distinction which serves as the foundation of much of the argument in favor of the present demandant, viz. “ that as there was a time limited for conveying the legal estate, and that time had arrived in the lifetime of the plaintiff’s husband, the widow was therefore entitled to *481 dower, upon a principle well known and settled in a court of equity, that where an act is to be done by a trustee, that is looked upon as done which ought to be done.”
Notwithstanding this attempt, however, the doctrine seems now universally conceded, that there can be no dower of an equity of redemption.* In equity, whenever the debt was discharged, the mortgagee was, and is considered as a trustee for the mortgagor, (Powell on Mortgages 15) like every other trust, therefore, even after satisfaction has been made, it is not subject to dower. Where the legal seizin is in a trustee, the law will not recognize the estate of the cestui qui trust as a legal estate, of which there can bo a seizin.
In Comyn’s Digest, title Dower, it is said, that an action of dower unde nihil habet is in the nature of a writ of right. If, therefore, it be strictly a legal, and not an equitable demand; if it cads for a legal seizin, and requires to be made out by legal proof, equitable circumstances can have no weight in the determination of the question. The rule laid down by Jekyll is the rule adopted in chancery, even if not overruled by subsequent authorities, cannot be admitted as decisive. It must be made to appear, that the husband of this demandant, subsequent to the mortgages becoming absolute, was seized of a legal estate of inheritance in the premises, out of which dower is demanded, else the essential requisite is wanting, and the judgment of the court must be against her.
Lord Coke, in his commentary on Littleton, informs us of the circumstances which must combine to perfect the title to dower ; they are — 1. marriage — 2. seizin of the husband — - 3. his death. The present question turns altogether upon the second requisite. Seizin is a word of technical significa *482 tiou, and has sometimes been defined a possession accompanied with the investiture of the fee. In legal proceedings, it is usually set forth by a possession, *and taking the esplees to some value; and whenever it is alleged, or necessarily set out as the foundation of a claim or title, it must be proved. If there is a failure in this respect, the demand-ant must fail in her action. Dally v. King, 1 H. Bl. 1.
Of seizins, there are two kinds spoken of in the law; a seizin in fact and a seizin in law. The first may be acquired tortiously, the second must always be a legal subsisting right. To give a right to dow-er, it is not essential there should be a seizin in fact; nevertheless if one be disseized before marriage, and dies after marriage and before entry, the femme cannot be endowed. 2 Bao. Abr. 271.
In addition to these common law requisites, the freedom of restraint upon alienation, at this time, requires another circumstance, that the right of dower, which is initiate by the marriage and seizin of the husband, should not have been' conveyed away. In England, if the wife joins her husband in a fine or common recovery, or in hfew Jersey, if she unites with him in a conveyance, and acknowledges the deed in the manner prescribed by the act of the legisla? ture, she is barred of her dower in case she survives- her husband. When this bar has once been perfected by this-act of hers, the right cannot be revested, as I apprehend, without a new seizin by the husband. The effect of the former seizin is extinguished, as to her claim.
That the present demandant did thus join, with all the necessary formalities, in conveying away the fee-simple of the premises out of which she now claims dower, and that her right did terminate by her so joining, are matters equally undeniable in my eyes, after the demandant has, by her demurrer, admitted the truth of the facts set forth in the plea of defendant. If subsequent to this period nothing has been done to revest the estate of the husband, or to create a new seizin, the conditional interest conveyed *483 by the deeds of mortgage became absolute on the non-payment of the money, and in the face of this right the present suit is not sustainable.
It seems equally clear, that upon the non-payment of the money secured by the first mortgage, the estate became absolute at law in the mortgagee, so far as affects the legal seizin in the lands; the condition annexed to the conveyance not being performed, it was, to all legal purposes, as if it had never been inserted in the deed, and, the wife being a party, the right to *dower became extinguished. Harrison had no longer a seizure in fact or in law, but retained merely an equitable 'interest, of which he could only conditionally avail himself. The law is clearly stated, (Powell on Mortgages 321) “ a wife is not entitled to dower out of the equity of redemption of a mortgage in lee. The distinction between a mortgage in foe and a mortgage for a term of years, appears to have taken its rise from the equity of redemption of the former having been considered as analogous to a pure trust, of which it ¡was formerly, and is now generally understood dower cannot be; as well because in such case there is no seizin by the husband, which, at law, is necessary to consummate the title of dower in the wife, as that by the preamble to the statute of uses it was recited, that by means of uses the wife was defeated of her dower; from whence it appeared, that the wife of a eestvÁ qui use was not dowable at common at law; and if so the conclusion necessarily followed, that as a use at common law was the same as a trust since the statute, the wife could no more be endowed of a trust since the statute, than at common law and before the statute she could of a use.”
The inference which, according to my apprehension, may fairly he deduced from this passage, is, that as the seizin in fact and the seizin in law passed to the mortgagee, if the husband had any seizin which could serve as a foundation for the wile’s claim to dower, it must arise from some act subsequent to the mortgage and to the forfeiture which ensued.
*484 Wliat, then, are the subsequent acts, which it is supposed had the effect of revesting the seizin in the husband ? The only ground alleged in the present instance is, that the moneys which the mortgages were given to secure were paid. The mortgagees brought actions on their bonds, obtained judgments against William Harrison, issued executions against his property, and sold his interest in the lands, which the sheriff presumed to be a fee, to Eldridge, the defendant. Upon what principle these proceedings can be looked upon as revesting the seizin in Harrison, so as to entitle his wife to dower, I confess my inability to understand. The sheriff’s seizure may possibly be a nullity, his deed conveying the land which Eldridge may perchance find himself without any title to the premises;* but that they could operate *to the use of Harrison, or give him the seizin which he had legally conveyed away, is a conclusion at which I have not been able to arrive. Under the execution against Harrison, had the sheriff authority to levy upon the estate of the mortgagees ? under the sale and conveyance to Eldridge, was an estate granted to the husband of the demandant? The affirmative of these questions seems implied in the present claim, and to lie at the foundation of the demandant’s title.
The utmost extent of the interest which Harrison then had in the premises was an equity of redemption, an estate created by the courts of equity, and cognizable only in them. If the sheriff sold nothing more than the right of the defendant in execution, and did convey that to the now defendant, he must have sold the equity of redemption, and nothing more. Neither by the terms of his conveyance, nor by the authority of the law, could any proceedings by him, under the fieri facias, operate to discharge the estate *485 from tho encumbrance, or execute tho powers of a court of cliaucery. He could not restore the seizin to Harrison, and, unless that was done, the demandant must fail.
It does not appear that any such extraordinary power was over before thought to reside in the sheriff, or any such extraordinary consequences thought to flow from a sale under the execution. Hor is the idea ever intimated by any of our elementary writers, that an illegal sale can, simply and of itself, divest a legal estate. Blackstone gives a concise view of the law relating to mortgages, but he nowhere seems acquainted with the doctrine, that a mere payment of the money secured would revest the estate in the mortgagor; much less would it have that effect when the payment was made by a stranger, and not by the heirs or assigns, or other privies, who, alone, have the capacity to perform a condition which is stricti juris.
The learned commentator states his view of tho operation of mortgage, in language very different from that held by the counsel for tho demandant. He says, (2 Bl. Corn. 158,) “ tho land which is so put in pledge, is by law, in case of non-payment at the time limited, forovor dead and gone from the mortgagor ; and the mortgagee’s estate is then no longer conditional, but absolute.” And afterwards, “in case of failure, whereby the estate ^becomes absolute, the mortgagee may enter upon it and take possession, without any possibility, at law, of being afterwards evicted by the mortgagor, to whom the land is now forever dead.” Language so explicit cannot be rendered more intelligible by illustration ; it is precise, clear and leaves no room for cavilling or misunderstanding. If Blackstone had entertained the idea, that a subsequent payment made by a stranger, without any idea or wish that it should so operate, would be hold to revest tho estate of the mortgagor, he would certainly have intimated such an idea; unquestionably he would not have employed language so studiously selected to preclude any exception'or doubt. We are therefore entitled *486 to infer, that BlaeJcstone knew nothing of this doctrine. What he afterwards says, with regard to the powers assumed by courts of equity, is equally correct, but has no application to this question, it having been shewn that this is a question of pure unmixed law, wholly beyond the influence of equitable principles or chancery practice.
It has been urged, that the mortgages have in this instance been paid off, and the estate of the mortgagor become thereby absolutely revested. This appears to be the main pillar of the demandant’s claim, and relied upon as such in the argument. It will therefore require a serious examination. It is to be recollected by whom this payment is said to have been made; by the new defendant — neither party nor privy to the deeds of mortgage, nor, so far as appears, acquainted wfith the fact of their existence. If a friend of the mortgagor had come forward after the day, and, with a view of preventing a sacrifice of the property, had paid off the encumbrance, there might, in equity, be grounds for supporting a claim by him to an assignment of the mortgage. This, however, is not the doctrine contended for. It is urged, that although such payment is made without any such design to extinguish the encumbrance by a purchaser at sheriff’s ^sale, the seizin is revested; that the person against whom the execution issued, and whose rights, alone, the sheriff considered himself as selling, and the purchaser thought he was buying, is the only person who received real benefit, and took an estate; the only one who suffered was the purchaser, who, ignorant as he might innocently be of this doctrine, never dreamed he was discharging the estate of the encumbrance for which it was sold. The language of Powell 55, seems to have been totally misconceived *when it was made the foundation of this argument. He says, “ in an ejectment where a title was made under a mortgage, if evidence was given that the debt was satisfied, this was considered as defeating the estate the mortgagee had in the lands; and in such cases, *487 especially when the mortgage was ancient, the court would presume that the money was paid at the day, and would direct the jury to give their verdict accordingly, unless it clearly appeared the money could not be paid at the day. So far from considering this language, particularly when contrasted with, and illustrated by other parts of the same work, as strengthening the demandant’s case, it appears, to my mind, to weigh strongly against it. Powell evidently meant, that a satisfaction of a mortgage can only be when the money secured by it is paid the day it became due; when it appears generally that the debt is satisfied, the court will presume it was legally satisfied, that is, by a payment at the day. If, however, it is proved that the payment could not have been made at the day, the presumption is -destroyed. When the debt is discharged according to law, as I have before shewn, the mortgagee has the legal seizin in trust for the mortgagor; and the court never will permit the trustee, or those claiming under him, to set up this legal estate in him or them, to defeat the possession of the ee-stui qui trust. This principle was settled in Armstrong v. Pierse, 3 Bur. 1898. The same doctrine being applicable to all trustees, the court would not permit a recovery upon a merely formal title, when the cestui qui trust could have compelled a reconveyance immediately, and thus have acquired the legal title. With these explanations, the remarks of Powell are as equally reconcileable with his own express language, as I have before cited it, and with the settled doctrinos of the law.
Even admitting, however, that these circumstances are to be disregarded; that the strict letter of Powell is to be considered Avithout ascertaining its meaning and necessary limitation by a reference to the context; admitting further, what Avould be an equally important concession, that arguments deducible from the practice of courts in cases of ejectment, over which they assume and exercise absolute control for the furtherance of justice, are applicable to the strictly *488 legal proceedings in a writ of right, upon which footing this action is to stand, still where is the proof of the averment, that these mortgages have been actually *paid off?' The amount due on them collective^, for we are not to presume payments not appearing, must have exceeded, at the time of the sale, the amount paid by the purchaser; and the payment of the £930 was, at the utmost, only a discharge quoad hoc. We cannot, therefore, say, from the facts spread upon this record, that had Harrison lived he-would have been entitled to come into a court of equity, and. demand a reconveyance of the premises, or to require to-have the mortgages cancelled. On the whole case, then, I am clearly of opinion that the demandant is not entitled to-judgment.
Botxdinot, J.
It will be unnecessary again to state the circumstances of the present case, they having been so recently 'and fully recapitulated by my brother. Before expressing, however, my opinion on the questions that have been discussed, I would remark, that during the argument,, the idea was not suggested, that a sale by the sheriff on a common judgment will bar the wife of dower. It has been repeatedly determined, that by such a proceeding the widow’s claim will not be affected, and the doctrine of the-law is' conclusively settled upon that point.
Assuming this, then, as an uncontroverted principle of our law, the questions which propose themselves for our consideration are — 1. Whether the bond on which this-judgment was obtained makes any essential difference in the-nature or the qualities of the judgment ? 2. Whether the-defendant, being an utter stranger to the whole transaction prior to the judgment under which his claim is derived, can be permitted to set up an outstanding mortgage in bar of the demandant’s right ?
As to the first of these questions : when one gives his bond for the payment of money, and a mortgage to secure *489 that payment, the two instruments are to be considered, as to some purposes, as separate and distinct obligations or securities for the same debt. The mortgage may be given up or cancelled, and yet the debt remain unaffected by the transaction. When the creditor resorts to legal process to enforce the payment, he may elect to consider the securities as distinct. lie may, at his option, proceed singly upon the obligation, and rely upon the fruits of a simple judgment and execution ; or he may proceed singly upon the deed of mortgage, either by ejectment, to recover the *possession of the premises, or by a bill in chancery, to foreclose the equity of redemption in the mortgagor, or he may proceed upon both securities at the same time.
The effects and consequences of these different modes of proceeding are, in like manner, essentially variant, and in considering them particularly, we shall be brought far towards a solution of the principal question in the case. If the mortgagee proceeds by ejectment, be will recover the possession of the premises mortgaged, and retain them until the debt is paid, but no longer. Powell 92, 93. Tie acquires no title in the lands, but is considered as a trustee for the mortgagor; he has the perception of the rents and profits, but he is accountable for them, and merely holds in his own hand the security for his debt. If ho files a bill in equity to foreclose, the wife having joined in the mortgage, must be made a party — and, being brought-before the court, they must cither redeem, or submit to have the equity of redemption foreclosed, by which the wife’s right to dower in the premises is for ever barred, or the lands may be sold under a decree of the court, by which the rights of both the defendants will be transferred to the purchaser under the sale, who will hold the property free from every claim on the part of either the husband or wife.
If, however, the creditor or mortgagee proceed simply to sue on his bond, and obtain judgment-, the execution issued thereon may be levied indifferently on all the property of *490 the defendant, as well that not included in the mortgage, as that specifically pledged. If the mortgaged premises are levied upon and sold under it, the estate conveyed by the sheriff to the purchaser, depending wholly upon the judgment and execution, is in no manner affected by the circumstance, that a mortgage had been previously given. The mortgagee may be considered as party to the proceedings, and it would be questionable, at least, whether, having treated the property as the estate of the mortgagor, lie should not be estppped from ever after setting up a claim under the mortgage. This is the general understanding of the country, the purchaser bids as if there was no mortgage, all parties are considered as joining in the sale, and in case of any deficiency the estate is considered as discharged of the claim. This case, however, does not require of us to 'decide what consequences would result under such circumstances.
*It is necessary, in the further prosecution of this inquiry, to examine what the sheriff can legally levy upon, sell, and convey under an execution. His whole authority is derived from the act of December 2, 1743, (Allinson 129*) the fifth section of which empowers him to convey to the purchaser all the estate and right which the defendant had in the premises, and the purchaser is to have as perfect and complete an estate as if the defendant had himself executed a good deed for his entire interest, and had received the consideration money therefor. Here a limit is prescribed to the authority of the sheriff; he is empowered to convey as complete an estate as the defendant himself could have conveyed at the time of the judgment. If the husband, then, could have conveyed away the wife’s right to dowei', the sheriff could do the same. If the former possessed no such power, there is certainly no ground upon which it can be contended to belong to the sheriff. As the title of the wife *491 is wholly beyond the control and disposal of the husband, I have no hesitation in saying, that it is wholly unaffected by the sale under the execution.
The case which might be imagined most analogous to that which really occurred, and which will furnish us with the principle upon which the present case ought to be decided, is suggested by the language of the act of the legislature just cited. Supposing Harrison himself, without the intervention of the sheriff, and without any proceedings on the part of the mortgagees, had made the sale and conveyance to the present defendant, and had himself applied the proceeds of the sale to paying off' the mortgages, can a question exist, as to the consequences which would legally result from the measure? would not the mortgages, after satisfaction, be as if they had never been, and the wife’s right to dower which had been not absolutely extinguished, but only conditionally suspended, be revived in all its strength ?
If the purchaser would derive any benefit from the wife’s having joined in the deed of mortgage for the security of the debt, he may, if he has equitable claims to it, obtain an assignment of the mortgage; he will there stand in the same situation in which the mortgagee would have stood had he reduced the mortgaged premises into possession without foreclosing the equity of redemption, but certainly in no better. This would be ^merely upon the footing of a trustee holding the promises as a pledge until the debt was discharged, redeemable at any time by the payment of the original debt, interest.and costs; a simple chattel interest, as it -is considered by all the elementary writers.*
If a contrary doctrine were established, the consequences would be, as was forcibly urged in the argument, that a husband, by inducing his wife to join in a mortgage for a debt *492 however inconsiderable, would acquire an absolute control over her right to dower, and might deprive her of her interest in an estate of the greatest value. She could not, in any manner, prevent the bringing of an action on the bond, or any of the subsequent proceedings. Her joining in what is called a mere mortgage, therefore, would be not merely pledging her interest as an additional security for the payment of the debt, but a total disposition of her estate; an absolute, not a defeasible conveyance.- The true point of view in which to consider the transaction, is that in which it unquestionably appeared to the parties, and which is consistent with the nature and character of a mortgage. It must be regarded as an additional and collateral pledge of her interest, not to be sold or disposed of for the "payment of the debt, until the husband’s estate should prove insufficient for its discharge. So long as he is able, out of his own funds, to remove the encumbrance, so long his estate should be exclusively looked to; when its insufficiency appears, it will be time to have recourse to the security. I am unable to anticipate any serious objection to this course, or any evils that would result from following it into practice.
The second question to be considered is, whether the defendant in the present suit, a stranger, in the eye of the law, to all the proceedings previous to the judgment under which he claims, can set up these outstanding mortgages in bar of the plaintiff’s claim to dower ?*
The setting up a term or mortgage in a third person, by a defendant who can claim no interest in, or benefit under it, merely to bar a .legal demand, is not, in my opinion, reconcileable either with the principles of justice, or the sound doctrines of the law. This seems to have been likewise the opinion of Lord Mansfield, who, in the case of Bristowe v. Pegge, (1 *Term Rep. 758, n.) says, that “ a trust never shall be set up against him for whom *493 the trust was intended; it is a mere form of conveyance, and it is admitted, that when a term is in trust for the benefit of the lessor of tlie plaintiff, the defendant shall not set it up in ejectment, as a bar to his recovery.” His lordship, a little after, makes the following- remark, which is strictly applicable to the present case. “ What is the defence set up ? A trust for a third person is set up. The plaintiff admits the charge, and says, he only claims subject to the encumbrance. The trustees do not assert their title; then shall others be admitted to set it up ?” The other judges concurred in these doctrines, and Buller expressed himself in language still more forcible. He says, a “ tenant cannot set up the title of the mortgagee against the mortgagor, because he holds under the mortgagor, and admits his title.” The case of English v. Wright, in this state, extends and applies this same doctrine to this very action of dower; and the defendant, holding under the title of the husband, was held precluded from afterwards questioning it, as against the widow’s claim to dowor. In that case, also, the defendant, was a purchaser at sheriff’s sale, and the decision in that caso I consider as ruling the present. Buller, in the case cited, goes further: “it has been the uniform doctrine, that if the1 plaintiff be entitled to the beneficial interest, ho shall recover the possession.” The defence here set up is a mere formal legal title in another person, whose encumbrance having been satisfied, the estate is a mere trust for the benefit of the demandant. I am aware that the authority of this case of Bristowe v. Pegge has been somewhat shaken by the subsequent decision in Den ex dem. Hodsden v. Staples, (2 Term Rep. 684) yet after Butter’s dissent from the opinion of the court in this latter case, and the reasons assigned by him for adhering to his former opinion, I cannot fully acquiesce in the propriety of this subsequent determination.
In Palmer v. Danby (2 Eq. Ca. Abr. 386) a dowress was held to have a right to recover, subject to her proportion of *494 the mortgage. These doctrines, recognized in numerous decisions, and sanctioned by the opinions of some of the most eminent lawyers in Westminster Hall, are better entitled to a favorable reception among us, and are more congenial to our political circumstances and habits. The necessities incident to a new and *rapidly improving cquntry, require so frequently the borrowing of money, that there are few estates among us which have not, at one time or another, been under mortgage. If, therefore, it was to be settled as law, that a tenant or defendant might defeat a legal claim by giving in evidence an outstanding mortgage, which, though actually paid off, had never, in fact, been cancelled, or, as the present defendant would require, the estate had never been formally reconveyed, I believe there are few cases of ejectment in which the plaintiff would escape a non-suit. It never has been customary, in this state, to execute a reconveyance; when the mortgage is satisfied nothing more is generally done than to tear off the seals, or endorse on the instrument a receipt in full. It is impossible to calculate the amount, or limit the extent of the evils which would be likely to result from the adoption, at this time, of a doctrine never before broached among us, and so utterly at variance with the ideas and practice of the most prudent men.
The same ideas and practice appear to prevail even in England. Lord Mansfield says, “ a mortgage is a charge upon the land, and whatever would give the money will carry the estate in the land along with it, to every purpose. The estate in the land is the same thing as the money due on it. It will be liable to debts, it will go to executors, it will pass by a will not made and executed with the formalities required by the statute of frauds. The assignment of the debt, or forgiving it will draw the land after it as a consequence; nay, it would do so though the debt were forgiven only by parol.”
*495 The mortgagee has only the legal estate as a security for the payment of his money, while the actual possession and usufruct continue in the mortgagor, until divested by legal process. The mortgagee may think this unnecessary, and, until he chooses to act, no one has a right to make any use of this legal title. On the whole case, then, I think the demandant is entitled to judgment.
This being the opinion of the court, there was
Judgment for demandant.

 But it has Been decided by the Court of Errors, in the case of Montgomery v. Bruere, (2 South. 865) that there may bo dower of an equity of redemption ; 'and this, although contrary to the English authorities, is now tile established law in the states of New York and Connecticut, (see 6 John. Rep. 299. 7 Ib. 278. 13 Ib. 319. 1 John. Ch. Rep. 45 1 Con. Rep. 559. Fish v. Fish) and is certainly most consistent with the principles and analogies of the law.

 See Waters v. Stewart, (Caine’s Ca. Mr. 47) which determines that the equity of redemption may ho levied on and sold by the sheriff, under a fi. fa.; but query, whether it can be thus sold at the suit of mortgagee. Till v. Annin, 2 John. Ch. 125; Ibid. 275.

 Same as the act of 18th Feb. 1799, sec. 12, Pat 371, Rev. Laws 433.

 See Runyan v. Merscreau, 11 John. 534.

See the authorities on this question collected in a note 3 Wheat. 224.